Good morning, Your Honors, and may it please the Court, I'm David Selmans on behalf of Amazon. This case concerns whether local delivery drivers fit within the Federal Arbitration Act's limited exemption for classes of workers engaged in interstate commerce. The Supreme Court has provided three rules that must govern application of the exemption. First, do you, as you stand there today, assume then the burden of showing that this arbitration provision does not need to be applied? Actually, plaintiffs, we think, bear the burden of establishing that the exemption would apply. I'm addressing the legal errors that the court below made for this court's benefit, but we do think, especially given that there's no dispute that the coverage provision of other words, the underlying transactions involve commerce, that it's on the plaintiffs to establish that the arbitration should not be compelled or that the exemption applies. So the three rules the Supreme Court... Does that bear any importance in our decision here? Well, it might, depending on how this court addresses certain issues. I do think that any, for example, any argument that a remand would be in order here for factual development about how frequently Amazon Flex drivers cross state lines, we don't think would be appropriate for a number of reasons, one of which is that plaintiffs below never asserted any fact-based issue with regard to the exemption, never asked for discovery. So I do think there are ways in which it may come into play, Your Honor. The fundamental error the court below made was it disregarded these three rules the Supreme Court has provided, the first of which is you must give the terms of the exemption their ordinary meaning as of 1925. The second is that you have to interpret the scope of the catch-all... Wait a minute, wait a minute. As of 1925? So you're saying that we can't take into account case law from the Supreme Court later? Well, it's not a matter, Your Honor, of taking into account case law, but that what the Supreme Court has held, both in Circuit City and New Prime, is that the exemption, its terms should be given their ordinary meaning as they existed at the time it was enacted, which was 1925. But you're not suggesting that, for example, New Prime... Oh, of course. We've got all kinds of cases, Nieto, Paloca, Christie, and Ward that deal with whether or not you have to cross boundaries, which I find perfectly applicable, and that were all decided since 1925. Yes, I do think, and we can get into some of those cases, Your Honor, I do think the court obviously can look at case law since that time, but when it's interpreting the meaning of terms, the ordinary meaning as of the time they were enacted for purposes of this statute is what governs. And then the third rule the Supreme Court has provided is that you have to construe the exemption narrowly so as to avoid undermining the Act's broad coverage provision and pro-arbitration purpose. So those are the three principles. What the court below held... And what do you rely for that last principle, which case? Circuit City, Your Honor, makes this... You think that's what Circuit City says? It does, Your Honor. It says that the exemption has to be given a narrow construction to avoid undermining the broad coverage provision of the Act and the pro-arbitration purpose of the Act. And I'm really interpreting the residual clause, am I not here? You are engaged in foreign or interstate commerce. Correct. So this is controlled and defined in reference to the categories of workers which have already been cited? Yes, Your Honor. Similar to seamen and railroad workers? Yes, Your Honor. And... I'm sorry, does Your Honor have more questions? I don't mean to cut you off. The only thing I was saying, so if I say seamen and railroad workers, they then are exempt from the scope? Yes, Your Honor. What the Supreme Court and Circuit City explained is that the reason for the exemption is to take into account that Congress already had enacted or might enact in the future specific... The reason I ask you that is existence at this point in time, which would have been intrastate railroads. In other words, not railroads going like the Union Pacific or the Northern or whatever, but they just were within the different states. Would they be subject to the exemption? I think the answer is no, Your Honor, and let me walk you through why that is. First of all... I mean, it seems to me that if I just look at railroad workers, I very easily could exempt all railroad workers. I think that would be incorrect. It would be inconsistent with the principles that I just articulated for how to construe the exemption where you do so, and I would... One thing in particular I would emphasize for the court is that it's workers engaged in interstate commerce, and so I think it's seamen and railroad employees engaged in interstate commerce as well, because the catch-all says other workers, other classes of workers engaged in interstate commerce, so it's clear that Congress meant for the defined categories, seamen and railroad employees, to be engaged in interstate commerce. But just a minute, if the railroad, Union Pacific Railroad, brings supplies to railroads in Idaho, and those railroads in Idaho deliver those interstate commerce goods to the individual Pillsbury companies in Idaho, they're engaged in interstate commerce. The grain came from all over America. It came to Idaho. It was delivered to an Idaho railroad, and then it's given to Pillsbury company. Why is that not involved in interstate commerce? Well, it's engaged in interstate commerce, to be clear. They are engaged. They're hauling grain to the elevators in Idaho, and that grain came from other places. Yes, Your Honor. Here's... So let me try to answer you both in terms of historical principle here, because we know what actually Congress did with regard to seamen and railroad employees that I think can add some light as to what Congress intended by these categories, and then also by first principles. So you're saying if Congress didn't do something about it otherwise, then our interpretation should be different? No, I'm just repeating what the Supreme Court said in Circuit City, Your Honor, which is at the point of the exemptions... Well, I looked at Circuit City, but I didn't find anything which would lead me to believe, looking at what they did in Circuit City, that that railroad, which only was an intrastate railroad, who was delivering this commerce, which came all the way from wherever it is to Idaho to feed the Idaho cows, would not be subject to the exemption. Yeah, I don't think the Supreme Court in Circuit City had to get into that level of detail with regard to the history. The answer I'm giving you, however, is that what the Supreme Court in Circuit City said is that the point of the exemption is to give room for those specific dispute mechanisms that Congress had already enacted within the case of seamen and railroad employees. And if you look at those statutes that Congress had already enacted, and that this exemption was intended to accommodate, and the Supreme Court cited these, this is the seamen, excuse me, for seamen it's the Shipping Commissioners Act, and for railroad employees it's the Transportation Act. And if you look at those, it's clear Congress was not concerned with arbitration for workers that were primarily engaged in local activities. For example, with regard to seamen, the Shipping Commissioners Act, as it existed at the time the FAA was enacted, specifically provided that none of the provisions of that act would apply to vessels engaged in the coastwise trade. So if it was just shipping up and down one particular coast with frequent stops and ports, they were not covered by the exemption that the Supreme Court had enacted. Now, I'm not sure that's true. I mean, I'm trying to see what you're really saying to me is, if somebody works for Union Pacific and does the same thing as the Idaho Railroad does, they nonetheless would be subject to this problem. But if in fact you work for an Idaho company, and you take the goods at the Idaho state line and deliver them, interstate goods, interstate goods, that's what you're saying, is that you're not going to get any more money for that. No, that's not what I'm saying, Your Honor. And if I could just make this point, I think it's really important. This is the fundamental error that the Court below made, was it looked not to the activities of the class of worker at issue, which is what the exemption directs the sole analysis for application and exemption to be focused on. It's about the activities that the workers are engaged to perform. No, Your Honor. This is my point. If they were Amazon workers, they would have no trouble. You'd have no trouble saying that they weren't subject to the exemption. Sorry, saying they were. No, that's not correct, Your Honor. I think you're misunderstanding my argument. Let me try it one more time. The focus is on the activities that the class of workers are engaged to perform. Here, the class of workers engaged to perform local deliveries. It does not matter that they happen to be, whether they are employed by or contracted with Amazon or a smaller company or a local florist or home goods store. The class of workers we're talking about are local delivery drivers. They perform overwhelmingly local deliveries. Is that your best argument, that these are just handling local deliveries? Is that your best argument? I do think it's, I think, combined with the text and the principles I've been talking about. Okay, well, that's the case. Where does the stream of interstate commerce end? I'm sorry, Your Honor. Where does the stream of interstate commerce end? Following up on what my colleague said. You've got a package from a merchant in New York through Amazon, and they come here and they deliver it to the local folks. Does the stream of commerce end when Amazon delivers the package, or does it end when the, in this case, independent contractor delivers it to the person who bought it? So, this is the critical point, Your Honor. The analysis here doesn't turn on whether the products are in commerce or whether they're part of interstate commerce. So you're saying textualism doesn't matter? No, I'm saying textualism does matter, and the textualism tells you to focus on the activity of the worker, not how the goods traveled in interstate commerce. Section 1's coverage provision focuses on the transaction and its connection to commerce. Section, excuse me, Section 2's coverage provision. Section 1's exemption tells you to focus only on the activity of the workers. One of the fundamental problems with the approach adopted below, where the focus was on where the products traveled or the size of the employer and its connection to commerce, is that you get inconsistent results depending on whether you're talking about transporting goods or people. What does it mean for a person to have originated or been transformed in another state? With seamen and railroad employees, they're either interstate workers or they're not, regardless of whether they're shipping goods. But I thought you said earlier you don't want us to send this back to the district court for an analysis of how much of these people, how many of these people are just dealing intrastate as opposed to interstate. Well, that's correct. We think that in order to fit within the exemption. You can't have it both ways, can you? Oh, I don't think I'm trying to have it both ways. Yeah, you are, because you're saying if they're local, you know, they're not covered. Congress never intended that in 1925. And notwithstanding what my colleague talked about in terms of the grain and the railroads and so on, I'm using a different example. But the fact is, you're saying interstate commerce ends before these people are involved. Does the stream of interstate commerce end? I'm saying their activities are not in interstate commerce. They are not engaged in interstate commerce. What's the best case that you have that says that? Well, I think Circuit City, the principles of Circuit City get us there. I would point the court to the Supreme Court's decision at night, which is a case involving the Constitution and the line that's drawn there. But I would most emphatically urge the court to not make this mistake of treating the connection of the goods to commerce as the definition or using it to define the scope of the exemption. Okay, but what I mentioned before, we've got Nieto, Polanco, Christie, and Ward, at least those that are saying that what you don't have to be dealing across state lines to be involved in interstate commerce. What do we do with those cases? Well, so the plaintiffs cite to a variety of cases. All of them involve statutes that are fundamentally different than this statute. And they have been given broad construction, where here the Supreme Court has warned against any broad construction. The focus is on the activities of the worker. Are they engaged to perform interstate commerce in the same way that seamen and railroad employees are? And the proper interpretation for that is whether they are engaged for long-distance transportation services in the same way that seamen and railroad employees are. Go ahead. I'm sorry. I've already asked. I guess just to be clear, under the logic of your position, a case involving a supervisor, someone who does not personally travel in interstate commerce, but who is nonetheless supervising people who are, in fact, transporting things in interstate commerce, I took your position to be that those people may well be engaged in interstate commerce as well. That's not the question before the court. But there are a number of cases involving the supervisor role. I didn't understand your position to be inconsistent with those cases. Well, I think that's not an issue in this case. I think the difference here is that if you take the third circuit's decision, it focused, it presumed that there were interstate transportation taking place, and then there was a connection of the supervisor to interstate commerce. Here, these drivers have no connection to any interstate transportation of goods themselves, and they just make local deliveries. I know that I'm over my time, and I want to reserve. Well, you may want to reserve, but I want to ask you a question. I'm happy to engage as much. I just wanted to put my marker in, Your Honor. There is no time left, but we'll give you some more time. So are you saying there are seamen and railroad workers who would not be subject to the exemption? I'm saying that as we might otherwise think of the term. So I think, again, it's what you're really saying is, and this is the reason I'm focusing you, what you're really saying is there are seamen workers and there are railroad workers who you say do not receive the benefit that you, that these other people would like to have. They are not interstate workers either, and they, therefore, would be under the same situation. Are you really making that argument? Well, let me be very clear. So, yes, and here's why. Well, give me the good case. But I'm saying it seems to me, reading what your argument said in your brief, that seamen workers and railroad workers were involved in interstate commerce. Will those say? Your Honor, seamen that were engaged in interstate commerce, Congress provided an alternative mechanism for, and that comes from the Supreme Court's decision in Circuit City. If you look at the alternative that Congress had already provided, it only applied to seamen that were engaged in long-distance sea travel. So why did they put in the catch-all, then, if it's just for seamen and railroad workers? Because it's not just for seamen and railroad workers. I'm using those as examples because those. So you seem to be saying that whatever, if Congress had not already provided for an alternative mechanism in 1925, that they just don't count? No. For example, this Court's already held that long-haul truckers engaged in interstate commerce, when they provide, they are covered by the exemption. We have no qualm with that. Air, commercial air workers are covered by a subsequent amendment to the Railway Labor Act. They're covered. What's not covered are local delivery drivers who, it's mere happenstance from their point of view, whether the goods that they are delivering travel in interstate commerce before they pick them up or not. Local pizza delivery drivers, local florist delivery drivers, and local Amazon delivery drivers are local drivers that are not. There's a little difference there. The local pizza parlor may be only in business in that state. Flowers, who knows? I suppose there'd be some that would do interstate. But Amazon's one of the biggest companies in the United States, maybe in the world. This, again, Your Honor, is a fundamental mistake in terms of statutory construction. You do not look to the identity of the employer in defining the exemption. You look to the activities of the worker. But what the employer does and the nature of its business is critical, is it not? For purposes of the exemption, I don't think so, Your Honor. I think you look at the activities of the worker. Whether it's involved in interstate commerce? It's not that the requirement here is not that the employer be engaged in interstate commerce. It's just that the class of worker is engaged in interstate commerce. With respect, I don't read Circuit City the way you do it. It seems like you're saying that you could have, you know, call it a company interstate commerce. And whatever they do, if they hire somebody locally, they're not part of that company. No matter how important what they do is to that company's business, somehow they're not involved in interstate commerce. That's correct, Your Honor. I'm sorry, I didn't mean to speak up. Our position is that local delivery drivers are not exempt interstate commerce workers, whether they're employed by a large company like Amazon or a small company like a mom-and-pop store close by or some other retailer. What you focus on is the activities that the workers engage to perform. And from the standpoint of local delivery drivers, they pick up in their local area, they deliver in their local area, and the path of the goods before they pick it up is entirely happenstance from their point of view. Do you agree that the record shows that at least some of these people have been doing interstate deliveries? So in terms of the record, the plaintiffs have not asserted that any of them cross state lines. There is one declaration. The name parties, you mean? That's correct. There's one declaration, and I would ask the Court to look at it. It's at Excerpt Records 32. This is the only one they've identified, and it's from a fellow by the name of Dwayne Johnson who says that after years of being engaged as a local delivery driver for Amazon in the New York City area, which has state lines close by, that on one occasion he crossed a state line during a two-hour delivery span where he made eight deliveries, one of which just happened to be across the line in New Jersey. And that is all that they have put in in terms of interstate crossings. More fundamentally, even if there are interstate deliveries, they're de minimis here, and the Supreme Court has urged against erecting initial inquiries and barriers to arbitration that require fact development that are hurdles that must be passed through early because it defeats the point of arbitration. The Court has also urged against making the enforceability of arbitration turn on what, from the standpoint of the FAA, is mere happenstance. And with respect, I would submit that the path of the goods before the local delivery drivers pick them up and start their activities is mere happenstance from the point of view of the FAA because it directs that the inquiry has to focus solely on the activities of the workers, and the activities here are overwhelmingly local. Thank you for your argument. May it please the Court, my name is Harold Licton. My brother is simply wrong that you look at the worker. You look at whether the worker is engaged in the flow of interstate commerce. Well, the statute doesn't say that, though, does it? It says class of workers engaged in interstate commerce. And if you look at Circuit City, Circuit City said repeatedly that you look at whether the workers are engaged in the flow of interstate commerce. Now, remember, the plaintiff in Circuit City just worked in a store. The Supreme Court had no problem with that part. What they said is that person wasn't a transportation worker. So you have to be a transportation worker, and you have to be engaged in the flow of interstate commerce. If you look at that, it seems to me you're reading a lot into that discussion about engaged in the flow because in the context in which that comes up in Circuit City, what the Supreme Court is telling us there is that we're going to interpret some of these terms restrictively. And so it seems a little odd to then take from that discussion a broadening of an exemption in the FAA. I just don't think this within the flow portion of Circuit City really answers this question for us. I agree. I was just saying that Circuit City speaks. My brother spoke about Circuit City. It speaks about the flow of interstate commerce. But I don't rely on Circuit City for this proposition. One thing we agree on is that you have to look at what Congress intended and what was the state of the law in 1925. That's critical. In 1925, there was a body of case law developed by the U.S. Supreme Court interpreting the Federal Employees Liability Act, which required even for railroad employees and seamen that they be engaged in such interstate commerce and that they injure themselves while engaged in such commerce. So it was very restrictive. And there were many cases relating to the defendants claiming that the person had not been injured in interstate commerce. And the Supreme Court resolved this issue in a series of cases, and I cite to you the Shanks case, which is in public justice's brief, the Baltimore OSWR case versus Birch, where the person in that case was only picking up unloading freight at a freight station. It was sort of like a gig worker in the 1890s because they just got some townspeople to come in and unload freight. And the court found that that person was entitled to sue under FELA because at the time they were unloading freight that had been going through interstate commerce, and therefore that was interstate commerce. And most importantly is the Hancock case from 1920, just five years before this statute, the FAA, was enacted. And in that case, the workers in question simply got coal from a coal mine and took it to the rail yard, totally intrastate. And the employer argued that they did not have to cover that person under FELA because that was purely interstate activity. And the Supreme Court said no, that coal was eventually destined for other states, therefore those workers were in the flow of interstate commerce. That's just the converse of what we have here. Think about what we have here. Amazon says in its brief that they used to use UPS, the United States. They also used to use the United States Postal Service. They used to use FedEx. All of these workers who would arrive at their station, FedEx or UPS, they would load up their packages, their Amazon packages, and then they would do the last mile delivery. Now, there's no question that these packages were coming from all over the world. There's no question that the defendant here is Amazon Logistics. We've cited to you, we put in the record. So would it be different then if the workers worked for Joe's local delivery service? They were not part of Amazon. Amazon had an arrangement where as soon as the goods came to the Seattle warehouse, they would turn them over to the custody of Joe's local Seattle delivery service, and all of these workers were employees of that company? The answer is no because, first of all, that was expressly rejected. The Ward case, which is express messenger, I think is the defendant. All the cases look at where the products are coming from and whether they're still in the flow of interstate commerce. So let's say Amazon has products coming in from all over the country and then contracts with Joe's, like you say. Joe's is still performing the last mile delivery. That package is still in the flow of interstate commerce until it reaches its home. The only cases that go against this proposition are the cases like Caviar and DoorDash. That's because the cases came, the products came to rest at the restaurant, and according to the courts, I'm not sure I agree with that, but the court said, well, they were then transformed into hamburgers or hot dogs or meals and then sent out, and so they lost their character. Here the packages start out as one thing, and when they're delivered to the door, they're the same thing. They're within the flow of interstate commerce. Don't you think, though, that if your position prevails here, it would be very difficult to distinguish an Uber Eats or a DoorDash because they, too, are taking products from elsewhere. Perhaps they're just reselling them like a can of Coke, or maybe they're doing some modest work on them, but it really seems to me that that would be a difficult doctrine to start applying as to how much the food was cooked in the restaurant as opposed to just passed on. Well, I don't think you get to that issue here because this is Amazon, and Amazon logistics prides itself on being one of the world's largest, if not the largest, logistics and package delivery business in the entire world, so you don't get to that here. There are other cases. As I said, there are some cases involving DoorDash and Caviar where the court does look at that and says, I don't find these people are really transportation workers as Congress envisioned because they're not really carrying products that are remaining in the flow of interstate commerce. There are those cases. But I would point out, and Judge Smith pointed out several cases, every circuit that has addressed this question, and at least 10 district courts have addressed this question, relying on these cases from 1925, and I didn't even get yet to the Interstate Commerce Commission cases from 1925, say because you look at the character of the flow of goods and whether the individual is involved with the delivery or unloading or transportation of those goods, they qualify for the Section 1 exemption. I guess it's the Section 2 that uses the phrase involved in that you just referenced. The Section 1 says engaged in. Engaged in. Engaged in is different than involved in. With all due respect, that was the same language that existed in 1925 in FILA when FILA was enacted years before. It was engaged in. In fact, you have to be injured in interstate commerce too, not just engaged in at the time. And there are a couple cases from 1925 that we point out in our brief, such as the Shanks case, where although they say that if you're involved in interstate commerce and handling the commerce, even though you're not crossing state lines, you're still protected under FILA, but they pointed out in Shanks, for example, that the person, although he worked for a railroad company at the time, he was just fixing a machine shop, and therefore he didn't have anything to do with goods. Here, all of our workers are involved in the direct transportation of goods interstate. And there's no question that. But, again, involved, right? Involved is the language in the other provision. No, I'm sorry. 1925, the statute, the FILA statute talks about engaged. It uses the term engaged in such commerce. It's the exact same language. My worry, are you through? I'm sorry. Go ahead. My worry is with hardened. Do you know the hardened versus roadway package system? Yes, I do. Okay. In there, we talked about the exemptions application, and it said it depends on whether the workers are engaged to perform interstate transportation. Now, these workers do not seem to be engaged in performing interstate transportation. They seem to be engaged in performing transportation right there in the city. They're engaged in handling. All they do is they get these goods. That's why I was after him just a little bit. All they do is get these goods, and then their total engagement has nothing to do with whether they're interstate or not. All they're supposed to be doing is transporting goods around their city. They may go to New Jersey once in a while. They may even go to Idaho because we're out in the sticks from Salt Lake. But they're not engaged in interstate commerce at all. They're engaged in delivering packages. That's what engaged in interstate commerce is. Transportation. Engaged in interstate commerce means you're engaged. But if we go to your idea, we've got to go back and trace every last package they ever had. No. And determine whether that's whether they're having interstate commerce. No, there's no question that Amazon says in its papers that there's no question that thousands and thousands of packages are handled by these drivers that come from other states. There may be some, a few minor numbers that come within the state, but their main goal is to deliver under the Amazon system. And those packages, when you go online and order, they're coming from these large factories or places where Amazon has these products. Amazon also uses this partnership arrangement where sometimes it's coming from private companies that just use Amazon as their platform. So there's no question that the products are coming from out of state. And they're still, as the Supreme Court has said on numerous occasions, they're still within the flow of interstate commerce when they're being delivered. And it's because of that, as I said, that every circuit court of appeal to address this issue, Palco in the Third Circuit, Boshanua in the Sixth Circuit, which was a postal service case, Lenz in the Eighth Circuit, and American Postal Workers Union in the Eleventh Circuit, they have all found that it's not necessary to cross state lines. That has nothing to do with it. It's whether the individuals are engaged in commerce, which is in interstate commerce. I'm trying to make it such that that doesn't happen either. But it seems to me that the language of Hardin suggests what your colleague has suggested. If they're not engaged in interstate commerce, if they're not engaged in it, if all they are is the final receipt of interstate flow of commerce, that they don't make it. But how would you square that with the U.S. Supreme Court decisions and all of these FILA cases where the workers, some were just unloading. Some were just taking the coal to the platform. Are there other Federal Arbitration Act cases that have interpreted the Federal Arbitration Act in light of FILA? Yes. In the Tenney case, which is a Third Circuit decision for the 1940s, which we cited to you, they relied on the FILA cases in interpreting that. How about at the Supreme Court? I can't think of a Supreme Court case that has used the FILA cases. But I think, again, if you're looking for what Congress intended in 1925, and we know from New Prime, and that's what Judge Gorsuch said, the proper thing to do is see what was the state of the law in 1925. By 1925, it was clear, both on these FILA cases and these Interstate Commerce Commission cases, that engaged in interstate commerce had nothing to do with crossing state lines. What if the statute just said engage in foreign commerce, and you had somebody who shipped something from China to Los Angeles, and then a shipper took it and took it from Los Angeles to New York, and it was then transported from New York to Europe, and we're talking about the person who's crossing all the United States by truck. But the question is foreign commerce. Would you describe that person who's just driving a truck across the country as engaged in foreign commerce? I'm not sure, Your Honor. I really wouldn't want to take a position on that, because you wouldn't have that history of cases under the FILA and Interstate Commerce Commission that dealt with this question time and time again. I would also point out that this has led every district court, Christie, Easterday, Ward, Wotheka, Hamrick, Austin, Nieto, Zamora, Miller, all these district courts, including the district court in this case and the district court in Massachusetts, and I'm arguing the same issue before the First Circuit. On Thursday, they caused them all to say that these workers, these Amazon workers or workers engaged in local deliveries or engaged locally, do not have to cross state lines to be involved in interstate commerce. That's their essential argument. The defendants, they're saying you have to cross state lines, and that's just not the law. It's never been the law, and I submit to you that when you read Circuit City also, it talks about it. Well, I'm not sure that's their argument. Their argument is that they are not interstate commerce workers, never were intended to be. They're local people, and whether they incidentally cross a state line or not has no effect. What they're saying is it's what they do. Right, and what they do is deliver. And now they're even saying not even what they do if they're a railroad worker, but not only what they do if they're a seaman worker. It's what they do incidentally. That's it. That's what they're suggesting. And what they're doing is the last mile of one of the biggest interstate and foreign enterprises in the history of the United States. They are delivering products that are in the flow of interstate commerce. One of the things that lends the Eighth Circuit suggests, and one of the things the Supreme Court suggests is one of the things you might want to look at is what would be the disruption that would occur if these workers were not doing their job, because that's one of the things the Supreme Court indicated in New Prime was on Congress's mind, not having forced arbitration that would disrupt. If you had a complete cessation of packages going out from Amazon, the whole system would break down. There would not be the free flow of interstate commerce for Amazon because nobody would be delivering these packages. This is how these packages get to the last mile. It's no different than the first mile. I do want to quickly address. You're out of time, so wrap up, please. Yes. The one question you haven't addressed is whether the court was correct or not, and defendants haven't raised this in the oral argument, about finding that because there was an express exclusion of utilizing Washington state law, whether they are stuck with that. Judge Kouchner said that they were because they specifically excluded the application of state law. That decision, I think, is correct. They can't have it both ways. They did it for a purpose. They didn't want to be stuck with what was very progressive Washington law, and this agreement came in 2015 where it wasn't clear where the Supreme Court was going with arbitration, and therefore having said that the Washington law does not apply to the arbitration clause, and if the FAA does not apply, there is no arbitration clause, and it's unenforceable. Just a quick question. It's my understanding that the First Circuit is hearing argument on an almost identical case. I don't know when. It's this week sometime. I'm arguing that on Thursday, Your Honor. Okay. Are there any other cases that you're aware of in a federal circuit that are pending on this same issue? As I sit here, I'm not aware of that. Okay. So you're the arguer in the First Circuit too, huh? Yes. Well, please give our brethren and sisters in that circuit our best regards. Thank you very much. I will. I'll tell them you were for me the entire time. Okay. We thank counsel. It would have been very helpful. It's a very interesting and challenging case. Did they have any? Do you have any time left? I don't think you do, do you? I don't think they did. I attempted to reserve, but I don't think I was successful. I don't think so. Let me just ask my colleagues. Do either of my colleagues have additional questions that they want to pose to either counsel? You know these are infinite numbers. You've all done a good job in your briefing. We appreciate that very much. So let's leave it at that. We thank you both for your argument. The case just argued is submitted. The court stands in recess for the day. All rise. This court for this session stands adjourned.
judges: M. Smith, Jr., N.R. Smith, Bress